Filed 4/28/22  P. v. Gonzalez CA6
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MANUEL GONZALEZ,<br><br>    Defendant and Appellant. | H046911<br>(Monterey County<br> Super. Ct. No. SS981989) |

In 1999, defendant Juan Manuel Gonzalez was convicted by jury trial of second degree murder (Pen. Code, § 187)**[1]** and attempted murder (§§ 664, 187).  The jury found true gang enhancements (§ 186.22, subd (b)(1)) for both counts, personal and intentional discharge of a firearm (§ 12022.53, subd. (c)) for the murder count, and personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)) for the attempted murder count.  Defendant was sentenced to an aggregate term of 67 years to life.  This court affirmed the judgment on appeal.  (*People v. Gonzalez* (Apr. 5, 2011, H020233) [nonpub. opn.].)

In 2019, defendant petitioned the trial court to vacate his murder and attempted murder convictions under newly enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437).  After appointment of defense counsel and briefing, the trial court

---

**[1]** All further statutory references are to the Penal Code unless otherwise indicated.

denied the petition. Defendant appealed. We rejected defendant's arguments and filed an opinion affirming the court's order denying the petition.

The California Supreme Court granted review (October 20, 2021, S270771). While the matter was pending in the Supreme Court, the Legislature amended section 1170.95. (Stats. 2021, ch. 551, § 2; Senate Bill No. 775.) The Supreme Court transferred the matter back to this court with directions to vacate our original opinion and reconsider the cause in light of Senate Bill No. 775. The parties have filed supplemental briefs. (Cal. Rules of Court, rules 8.528(f), 8.200(b).) Having reconsidered the cause in light of Senate Bill No. 775, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 1998, Hugo Ochoa and Samsun Lara were riding Lara's bike home in Salinas. As they rode, a red Chevrolet pickup truck drove past them going in the same direction. Moments later, two males walked towards them and asked about their gang affiliation. Ochoa responded, "nothing." The men said something, drew guns, and shot Ochoa and Lara. One assailant shot at least five rounds from a .45-caliber handgun; the other shot at least four rounds from a .380-caliber handgun. Ochoa was shot six times and survived. Lara was hit three times and died. A resident heard a motor and gunshots "[a]lmost simultaneously." The resident saw a red Chevrolet pickup truck pass by with its headlights off.

Salinas police began to look for a red Chevrolet pickup truck. About 20 minutes after the shooting, defendant was found driving a red Chevrolet pickup truck. An officer observed defendant drop off a passenger and continue driving. It was later established that the truck belonged to defendant's stepfather.

---

[2] We take the facts from our opinion in the appeal from the original judgment. On our own motion, we take judicial notice of that prior opinion. (Evid. Code, §§ 452, subd. (d), 459.)

2

Police secured defendant's residence, which was near the site of the shooting, while they sought a search warrant. At one point, defendant's sister attempted to leave the residence with a laundry basket, saying she wanted to do her laundry elsewhere. Police refused to let her leave without searching the laundry basket. After obtaining a search warrant, police found the .45-caliber and .380-caliber semiautomatic handguns used to shoot Ochoa and Lara in the laundry basket. Police found additional weapons and indicia of defendant's membership in a Norteño street gang in the residence.

After the shooting, defendant's mother told police she had spoken to defendant about his role in the shootings. Defendant told his mother that he did not "touch the gun," and that "he was just driving. That was it." Police later interviewed defendant. He denied any involvement or knowledge of the shooting. He stated that he picked up a friend, but that the friend was drinking from an open container of alcohol, so he asked the friend to leave the truck. While defendant was in jail awaiting trial, he spoke to a fellow gang member and asked him to claim that defendant was somewhere else at the time of the shooting.

At trial, defendant testified that he was not directly involved in the shooting, but rather that he unwittingly lent his truck to the shooters, whom he refused to identify, and then held their guns for them. Defendant also claimed that he was told to give the two men a ride home. Defendant declined to identify the two men, stating he feared for his and his family's safety. He explained that he asked a fellow gang member to provide an alibi because he was scared.

Defendant was convicted by jury trial of second degree murder (count 1; § 187) and attempted murder (count 2; §§ 664, 187). The jury found that defendant committed both offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The jury also found true enhancements in count 1 for personal and intentional discharge of a firearm (§ 12022.53, subd. (c)) and in count 2 for personal and intentional discharge of a

firearm causing great bodily injury (§ 12022.53, subd. (d)). Defendant was sentenced to an indeterminate term of 67 years to life in state prison, composed of 15 years to life for second degree murder plus a consecutive term of 20 years to life for the personal and intentional discharge of a firearm enhancement, a consecutive term of 7 years for attempted murder, and a consecutive term of 25 years to life for the personal and intentional discharge of a firearm causing great bodily injury enhancement. The court imposed two-year terms of imprisonment on the criminal street gang enhancements, but stayed those terms pursuant to section 12022.53, subdivision (e)(2). Defendant appealed, and this court affirmed the judgment.

In January 2019, defendant petitioned the trial court to vacate his murder and attempted murder convictions under newly enacted Senate Bill No. 1437. The petition indicated, by checking the appropriate boxes, that defendant "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The prosecution opposed the petition. Defense counsel was appointed to represent defendant, and a briefing schedule was established.

The trial court denied the petition. The court stated: "In this case, the complaint alleged willful deliberate premeditated murder. The defendant was convicted on a theory of aiding and abetting. The case was not prosecuted on a theory of felony murder, nor was it prosecuted on a theory of natural and probable consequences. [¶] It is important to note that the jury was not instructed on either of those theories. Consequently, the jury necessarily found malice aforethought based on their verdict. [¶] Additionally, the petitioner could still be convicted under the current state of the law. [¶] Petitioner has failed to state a prima facie showing for relief. The petition is denied."

4

**II. DISCUSSION**

**A. Section 1170.95**

Defendant argues that he is entitled to relief under section 1170.95. He contends that his conviction for second degree murder was "based on something less than malice" because there was "no evidence of intent to kill, the only theory on which the jury was instructed" at trial.

Defendant also contends that under recently enacted Senate Bill No. 775, he is now eligible for section 1170.95 relief. He concedes that while the jury was not instructed on felony murder or the natural and probable consequences doctrine, since there was no evidence that he "harbored malice," then the jury must have convicted him based on a " 'theory under which malice [was] imputed to [him] based solely on [his] participation in a crime.' "[3]

**1. Background**

For count 1, the jury was instructed with CALJIC No. 8.10: "Every person who unlawfully kills a [human being] [with malice aforethought] is guilty of the crime of murder in violation of section 187 of the Penal Code. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] The killing was unlawful; and [¶] 3. The killing [was done with malice aforethought] . . . ." The trial court also gave the jury CALJIC No. 8.11, which told it: " 'Malice' may be either express or implied." "Malice is express when there is manifested an intention unlawfully to kill a human being." The instruction further described that "[t]he mental state constituting malice aforethought does not necessarily

---

[3] We need not consider whether Senate Bill No. 775 is an ameliorative change in the law (see *In re Estrada* (1965) 63 Cal.2d 740, 744-745), or whether defendant would be entitled to file a new section 1170.95 petition in light of Senate Bill No. 775's changes. We assume Senate Bill No. 775 applies to this case and consider only whether relief is required under its provisions.

require any ill will or hatred of the person killed," and "[t]he word 'aforethought' does not imply deliberation or the lapse of a considerable time.  It only means that the required mental state must precede rather than follow the act."

After giving the jury CALJIC No. 8.20, which described the elements of first degree murder, the court gave CALJIC No. 8.30, which set forth the elements of second degree murder:  "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation."

For count 2, the trial court gave the jury CALJIC No. 8.66, which set forth the elements of attempted murder:  "Every person who attempts to murder another human being is guilty of a violation of Penal Code sections 664 and 187.  [¶]  Murder is the unlawful killing of a human being with malice aforethought.  [¶]  In order to prove attempted murder, each of the following elements must be proved;  [¶]  1. A direct but ineffectual act was done by one person towards killing another human being; and  [¶]  2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The court also described the law of principals with CALJIC No. 3.00:  "Persons who are involved in [committing] [or] [attempting to commit] a crime are referred to as principals in that crime.  Each principal, regardless of the extent or manner of participation is equally guilty.  Principals include:  [¶]  1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or  [¶]  2. Those who aid and abet the [commission] [or] [attempted commission] of the crime."  The court then gave the jury CALJIC No. 3.01, which set forth the requirements to find that defendant aided and abetted the commission of a crime.  Finally, the court also gave the jury CALJIC No. 3.31, stating that for counts 1 and 2 "there must exist a union or joint

6

operation of act or conduct and a certain specific intent in the mind of the perpetrator. Unless this specific intent exists the [crime] to which it relates [is not committed]."

As stated in its closing argument, the prosecution's theory of the case was that defendant was guilty of murder and attempted murder as "a principal" based on aiding and abetting the actual shooters.

### 2. *Applicable Law*

In 2018, Senate Bill No. 1437 was enacted to amend the felony murder rule and the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) In part, Senate Bill No. 1437 amended section 188 to require that a principal "shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also added section 1170.95, which created a procedure by which a petitioner who was "convicted of felony murder or murder under a natural and probable consequences theory" may "file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (Former § 1170.95, subd. (a).) Attempted murder and manslaughter were not expressly included as crimes that were eligible for resentencing under former section 1170.95. Thus, most Courts of Appeal construed relief under section 1170.95 as limited to murder convictions and not applicable to persons convicted of manslaughter or attempted murder. (See, e.g., *People v. Turner* (2020) 45 Cal.App.5th 428, 435-436.)

Recently, the Legislature amended section 1170.95 by enacting Senate Bill No. 775, effective January 1, 2022, to clarify that persons who were convicted of

7

attempted murder or manslaughter under a theory of felony murder or the natural and probable consequences doctrine may obtain the same relief as persons convicted of murder under those theories. (Stats. 2021, ch. 551, § 1, subd. (a).) In addition, Senate Bill No. 775 also amended section 1170.95, subdivision (a), to add the following language (which we italicize) concerning convictions that qualify for relief: "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, or attempted murder under the natural and probable consequences doctrine." (Italics added.)

### 3. Analysis

In *People v. Soto* (2020) 51 Cal.App.5th 1043 (*Soto*), review dismissed Nov. 17, 2021, S263939, the defendant was the driver of a car carrying another man who shot the victim to death. The defendant was convicted of second degree murder. As to the offense of murder, the jury was instructed on "principles of aider and abettor liability. The instructions informed the jury that a person aids and abets the commission of a crime when he, 'with knowledge of the unlawful purpose of the perpetrator' and 'with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice, aids, promotes, encourages or instigates the commission of the crime.' "

8

(*Id.* at p. 1050.) The jury was not given instructions that the defendant "could be liable for [second degree murder] either as the natural and probable consequence of the commission of another crime or based upon the felony murder rule." (*Ibid.*)

The defendant petitioned for resentencing under former section 1170.95, and the trial court denied the petition. (*Soto*, *supra*, 51 Cal.App.5th at p. 1048.) This court affirmed, holding that "the jury instructions themselves demonstrate as a matter of law that [the defendant] could not make a prima facie showing that he is entitled to relief." (*Id.* at p. 1055.) The court reasoned that the defendant's "jurors were not provided any instruction on which they could have found [the defendant] guilty of murder under [the natural and probable consequences] doctrine." (*Ibid.*) Accordingly, "under the instructions, the jury necessarily found [the defendant] culpable for murder based on his own actions and mental state as a direct aider and abettor of murder." (*Ibid.*)

Here, defendant indisputably was not entitled to relief under former section 1170.95 because he was convicted of second degree murder as a direct aider and abettor. At trial, the prosecution's only theory of guilt was that defendant aided and abetted the perpetrators of the offenses. The jury was given instructions consistent with this theory: the court instructed the jury on aiding and abetting, the necessity of a union of act and intent, and the necessity and definition of "malice aforethought" for second degree murder. As in *Soto*, the jury was not given instructions on the felony murder rule or the natural and probable consequences doctrine. Rather, under the instructions given, the jury necessarily found defendant culpable for murder based on his own actions and mental state as a direct aider and abettor. Accordingly, defendant was not entitled to resentencing under former section 1170.95 for his second degree murder conviction.

The same is true for defendant's attempted murder conviction. Even assuming former section 1170.95 applied to attempted murder, the record clearly establishes that defendant's conviction for attempted murder, like his conviction for second degree

9

murder, was based on a theory of direct aiding and abetting liability. It was not based on a natural and probable consequences theory or the felony murder rule. Thus, defendant was not entitled to resentencing under former section 1170.95.

Finally, we conclude that under amended section 1170.95, defendant is still ineligible for resentencing as a matter of law on his murder and attempted murder convictions. Defendant was not convicted based on any other "theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1170.95, subd. (a).) Rather, defendant was convicted as a direct aider and abettor to second degree murder and attempted murder. As we noted, the jury was given instructions consistent with this theory: the court instructed the jury on aiding and abetting, the necessity of a union of act and intent, and the necessity and definition of malice aforethought for second degree murder and attempted murder. Under the instructions given, the jury necessarily found defendant culpable for murder and attempted murder based on his own actions and mental state as a direct aider and abettor. Put another way, defendant could presently be convicted of murder or attempted murder notwithstanding changes to sections 188 and 189. (§ 1170.95, subd. (a)(3).) He therefore cannot establish a prima facie case for resentencing.

On this point, defendant contends that the jury was given "a legally deficient and erroneous implied malice instruction," which allowed it to convict defendant using some unspecified theory under which malice was imputed based solely on his participation in the crime. We disagree. Read as a whole, the jury instructions did not allow the jury to convict defendant based solely on his participation in the crime. Rather, the trial court adequately instructed the jury on the principles of aiding and abetting liability with respect to second degree murder and attempted murder, including the requirement that an aider and abettor shares the actual perpetrators' intent to commit the charged crimes. In that way, malice could *not* have been imputed based solely on defendant's participation

10

in the crime, as the instructions required the jury to find defendant personally acted with malice. Because the record of conviction demonstrates that defendant was convicted under a theory of direct aiding and abetting liability, he has failed to meet his burden of making a prima facie showing of entitlement to relief under amended section 1170.95.

### B. Instructional Error

Defendant contends that the trial court erred during his underlying trial by not giving a natural and probable consequences instruction. He admits that the court's failure to do so was not prejudicial at the time, but he argues that it is now prejudicial because, had the court so instructed, his "current entitlement to section 1170.95 relief would then be obvious."

Defendant's contentions do not address the superior court's ruling on his section 1170.95 petition. Rather, defendant seeks to raise issues involving his trial, which defendant could have raised in his appeal from the original judgment. Section 1170.95 does not provide convicted defendants an opportunity to challenge or relitigate the merits of their underlying judgments of conviction. Any argument regarding instructional error with respect to the underlying judgment is not properly within the scope of an appeal from an order denying a section 1170.95 petition. (See *People v. Gomez* (2020) 52 Cal.App.5th 1, 16-17, review granted Oct. 14, 2020, S264033 [agreeing that section 1170.95 does not provide a defendant with an opportunity to relitigate the merits of an underlying judgment of conviction] (*Gomez*).) Thus, we do not address defendant's claim of instructional error.

### C. Firearm Enhancement

Defendant argues that the firearm enhancements imposed under section 12022.53, subdivision (e) are unauthorized. He contends that the prosecution failed to plead a section 12022.53, subdivision (e) firearm enhancement, and therefore the trial court was

11

not permitted to impose a sentence under that provision.  He further contends that because the sentence is unauthorized, this court has jurisdiction to correct it.

As with the instructional error challenge, we conclude that this claim is not cognizable in an appeal from an order denying relief in a section 1170.95 proceeding. The only issue before this court is whether the superior court erred in denying section 1170.95 relief.  A challenge to the underlying judgment is not properly before this court.  The proper procedure for challenging the propriety of the vicarious firearm enhancement findings is to bring a petition for a writ of habeas corpus.  (See *People v. Gomez*, *supra*, 52 Cal.App.5th at pp. 16-17 [proper procedure is to bring habeas petition].)

III.    **DISPOSITION**

The trial court's order denying defendant's section 1170.95 petition for resentencing is affirmed.

_____
ELIA, ACTING P.J.

WE CONCUR:


_____
BAMATTRE-MANOUKIAN, J.


_____
DANNER, J.


*People v. Gonzalez*
H046911

13